Michael R. DiChiara
KRAKOWER DICHIARA LLC
77 Market Street, Suite 2
Park Ridge, NJ 07656
Tel: (201) 746-0303
Fax: (347) 765-1600

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
-------------------------------------------------------------------x
**CHRISTOPHER GRAFFAGNINO,**

                                **Plaintiff,**

                  **-against-**

**FIRST DATA CORPORATION,**

                                **Defendant.**
-------------------------------------------------------------------x

**COMPLAINT**

_____-cv-_____ (___)

**DEMAND FOR JURY TRIAL**

      Plaintiff, CHRISTOPHER GRAFFAGNINO, by and through his attorneys, upon personal knowledge as to himself, and upon information and belief as to other matters, brings this Complaint against Defendant FIRST DATA CORPORATION**,** and alleges as follows:

**PRELIMINARY STATEMENT**

      1.    Plaintiff brings this lawsuit seeking recovery against Defendant for Defendant's violations of the Americans with Disabilities Act of 1990, 104 Stat. 337, 42, U.S.C. § 12101 *et seq*. ("ADA") including the ADA's anti-retaliation provisions; and the Family and Medical Leave Act of 1993, as amended ("FMLA"), 29 U.S.C. § 2601 *et seq*. Plaintiff further brings this lawsuit seeking recovery against Defendant for Defendant's violations of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 to -49 ("NJLAD"), including NJLAD's anti-retaliation provisions.

2. Plaintiff seeks economic, compensatory, liquidated damages, attorneys' fees, punitive damages, and other appropriate legal and equitable relief pursuant to federal law.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under the ADA, and FMLA.

4. This Court has supplemental jurisdiction over the New Jersey state law claims under 28 U.S.C. § 1367(a), as they are so related in this action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

5. Venue is proper in the District of New Jersey pursuant to 28 U.S.C. § 1391 (b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

6. This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## ADMINISTRATIVE PROCEDURES

7. Plaintiff has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit.

8. The Equal Opportunity Employment Commission ("EEOC") has issued a Right to Sue Letter, dated November 1, 2017 to Christopher Graffanino, the Plaintiff herein, for EEOC Charge No. 524-2017-00708.

9. Allegations in Plaintiff's EEOC charge relate to illegal violations of civil rights on the part of the Defendant.

## THE PARTIES

**Defendant.**

10. Defendant First Data Corporation ("First Data") is registered to business in New Jersey as a Foreign Business Corporation organized and existing under the laws of Georgia.

11. Defendant is global payment technology solutions company.

12. Defendant maintains principal executive offices and/or a corporate headquarters at 5565 Glenridge Connector NE, Suite 2000, Atlanta, GA 30342.

13. At all times relevant to this Complaint, Defendant was and is an employer as that term is defined by the FMLA, 29 U.S.C. § 2611(4).

14. At all times material and relevant to this action, the Defendant has been and is an "employer" within the meaning of the ADA, 42 U.S.C. § 12111.

15. At all times relevant to this Complaint, Defendant was and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e),

16. At all times relevant to this Complaint, Defendant routinely conducted, and continues to routinely conduct, business within the State of New Jersey.

**Plaintiff**

17. Plaintiff Christopher Graffagnino ("Plaintiff") is an adult individual who is a resident of Middletown, New Jersey, in Monmouth County.

18. At all times relevant to this Complaint, Plaintiff is a "qualified individual" and suffered a disability as that term is defined by the ADA, 42 U.S.C. § 12111 and, as such, was protected by the ADA.

19. At all times relevant to this Complaint, Plaintiff had a severe medical condition as that term is defined by the FMLA.

20. Plaintiff was employed by Defendant as Crisis Director at First Data from July 2015 until he was wrongfully terminated on February 21, 2017.

## FACTS

21. Defendant undertook the following acts and omissions knowingly, willfully, and intentionally.

22. All actions and omissions described in this Complaint were made by Defendant directly and/or through their supervisory employees and agents.

**Disability Discrimination & Violations of FMLA**

23. Plaintiff was an exemplary and dedicated employee.

24. As a result of Plaintiff's excellent performance, Defendant quickly promoted him in January 2016.

25. As recently as February 2, 2017, Defendant rated Plaintiff as "Exceeds Expectations" in his performance review, resulting in a raise and substantial bonus.

26. Despite this, Defendant discriminated against Plaintiff due to his disability, interfered with his ability to take medical leave, and retaliated against him for engaging in protected activities, ultimately culminating in his wrongful termination on February 21, 2017.

27. On November 16, 2016, while on a business trip in California, Plaintiff was admitted to the UCLA Emergency Room because of difficulty breathing.

28. While there, Plaintiff was diagnosed with having Deep Vein Thrombosis (DVT), which resulted in a submassive embolism that broke into eighteen pieces.

29. The doctors determined Plaintiff's serious and life-threatening condition was caused from being overworked and was further exacerbated by the long flight.

30. Accordingly, Plaintiff's doctor required that he not work while he healed.

31. Defendant was aware that Plaintiff suffered from a serious medical condition.

32. While in California, Plaintiff contacted James Doyle, Defendant's health and safety manager, to initiate a workers' compensation claim.

33. Upon information and belief, when Defendant learned of the claim, Joseph Anamrumo, Mr. Doyle's supervisor, brazenly chastised and berated Mr. Doyle for assisting in Plaintiff's claim and prevented Plaintiff's claim from being processed.

34. As a result, Plaintiff was never apprised of his Claim Number nor was he given any information regarding the pendency of his claim.

35. Subsequently, in early January 2017, Plaintiff provided Defendant with a doctor's note that cleared him to return to work with the reasonable accommodation that he work at his own pace, that is, to avoid undue stress and further exacerbation of his disability.

36. Plaintiff returned to work on January 10, 2017.

37. However, in late January, Plaintiff began suffering from severe anemia, which the doctors determined was caused by work-related stress.

38. Because of the anemia, Plaintiff required the reasonable accommodation of intermittent medial leave to receive iron treatments.

39. Plaintiff informed Defendant that he was suffering from severe anemia and that he required intermittent leave for continued treatment.

40. Despite knowing of Plaintiff's condition and his need for regular treatments, at no point during Plaintiff's employment did Defendant offer him protected medical leave, as required by the FMLA.

41. On February 6, 2017, Plaintiff followed up with Mr. Doyle concerning the status of his workers' compensation claim.

42. Mr. Doyle ignored Plaintiff's inquiry for several days and, after more than a week, he reluctantly provided Plaintiff with a Claim Number.

43. Shortly thereafter, Defendant summarily and unlawfully terminated Plaintiff.

44. Notably, Plaintiff had an excellent work history with Defendant without any prior disciplinary action.

45. However, Defendant began a campaign to rid itself of Plaintiff as soon as he began requiring intermittent medical leave and sought workers' compensation benefits.

46. Defendant purportedly terminated Plaintiff for "declining performance", however, such a reason is clearly pretextual as he was given a glowing performance review and a raise less than three weeks before his termination.

47. Further, the example Defendant used to demonstrate Plaintiff's purportedly declining performance was that a phone call he hosted had dropped.

48. Plaintiff explained that the phone call was held on while he our of the office for medical reasons and was receiving iron treatments.

49. Additionally, while discussing Plaintiff's medical conditions at the termination meeting, John Bell commented that he "didn't think [Plaintiff] should have returned to work."

50. Thus, it is clear Defendant terminated Plaintiff in retaliation for his need for accommodations, his need for medical leave, and his application for workers' compensation benefits.

51. Defendant's termination of Plaintiff has left him with significant emotional and economic damages, and has left Plaintiff in a precarious situation with his health due to his need for continued treatments.

52. Defendant's unlawful treatment of Plaintiff has caused substantial economic and emotional damages.

53. Defendant terminated Plaintiff because of his disability.

54. Defendant terminated Plaintiff in retaliation for his request for reasonable accommodations due to his disability.

55. Defendant terminated Plaintiff in retaliation for his request for intermittent medical leave due to his disability.

## FIRST CLAIM FOR RELIEF
## DISABILITY DISCRIMINATION IN VIOLATION OF THE ADA

56. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

57. At all times relevant to this Complaint, Plaintiff was restricted in carrying on major life activities, including the major life activity of work, due to his disability that required medical leave and regular care by his treating physician.

58. At all times relevant to this Complaint, Plaintiff was an individual with a disability who, with reasonable accommodation, was capable of performing the essential functions of his position within Defendant's workforce.

59. At all times relevant to this Complaint, Plaintiff was a qualified individual with a disability within the meaning of the ADA, 42 U.S.C. § 12111(8).

60. Plaintiff requested reasonable accommodations for his disability in full compliance with Defendant's policies and procedures.

61. Defendant subjected Plaintiff to harassment in response to his request for reasonable accommodations.

62. Defendant discharged Plaintiff on February 21, 2017.

63. Plaintiff's disability was improperly a motivating factor in Defendant's termination of Plaintiff.

64. Defendant thereby violated the ADA.

65. As a result of such conduct by Defendant, Plaintiff has suffered damages and is entitled to back pay, front pay, and compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of Defendant's unlawful conduct.

66. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard for Plaintiff's federally protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

**SECOND CLAIM FOR RELIEF**
**(Discrimination Based on Handicap and/or Disability in Violation of NJLAD)**

67. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

68. At all times relevant to this Complaint, Defendant was and is an employer as that term is defined by NJLAD, N.J.S.A. 10:5-5(e).

69. At all times relevant to this Complaint, Plaintiff had a disability as that term is defined by N.J.S.A. 10:5-5(q).

70. Discrimination on the basis of disability is actionable under NJLAD.

71. As a person with a disability, Plaintiff belongs to the group protected by NJLAD.

72. Plaintiff was fully qualified to perform the essential functions of his job, at a level that that met or exceeded Defendant's reasonable business expectations.

73. Plaintiff requested reasonable accommodations for his disability in full compliance with Defendant's policies and procedures.

74. Defendant subjected Plaintiff to harassment in response to his request for reasonable accommodations.

75. Defendant discharged Plaintiff on February 21, 2017.

76. Plaintiff's disability was improperly a motivating factor in Defendant's termination of Plaintiff.

77. Defendant thereby violated NJLAD.

78. Defendant engaged in unlawful employment practices and unlawful discriminatory as those term are defined by the NJLAD N.J.S.A. 10:5-12.

79. These acts violate NJLAD and are illegal.

80. In taking the above described discriminatory actions, the Defendant acted with malice and reckless indifference to Plaintiff's rights pursuant to NJLAD giving rise to punitive damages.

81. As a direct and proximate result of Defendant's aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to his professional reputation.

**EIGHTH CLAIM FOR RELIEF**
**RETALIATION IN VIOLATION OF ADA**

82. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

83. The ADA, specifically 42 U.S.C. § 12203, makes it unlawful for an employer to discriminate against an individual who has opposed an unlawful employment practice or has assisted or participated in another individual's claim of discrimination.

84. By requesting reasonable accommodations for his disability, Plaintiff engaged in an activity protected by ADA.

85. Defendant was aware that Plaintiff had engaged in the protected activity of requesting reasonable accommodations.

86. Defendant took an adverse employment action against Plaintiff and materially changed the terms and conditions of employment including the unlawful termination of Plaintiff.

87. A causal connection exists between Plaintiff's request for reasonable accommodations and the adverse employment action Defendant took.

88. Defendant retaliated against Plaintiff for requesting reasonable accommodations in violation of the anti-retaliation provisions of the ADA.

89. By its conduct, Defendant subjected Plaintiff to unlawful retaliation in violation of the ADA.

90. As a result of such conduct by the Defendant, Plaintiff has suffered damages and is entitled to compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of the Defendant's illegal conduct.

91. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's federally-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant

## FOURTH CLAIM FOR RELIEF
## RETALIATION IN VIOLATION OF THE NJLAD

92. Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs, as if fully set forth herein.

93. Plaintiff requested reasonable accommodations due to his disability.

94. Immediately after Plaintiff requested reasonable accommodations, Defendant responded by retaliating against Plaintiff by, among other things, harassing Plaintiff and unlawfully terminating Plaintiff.

95. Defendant's harassment and termination of Plaintiff following his request for reasonable accommodations for his disability are in direct violation of Plaintiff's rights under NJLAD, N.J.S.A. 10:5-12.

96. Plaintiff engaged in the protected activity of requesting reasonable accommodations due to his disability.

97. A causal link exists between the protected activity and adverse employment action as Defendant knew of Plaintiff's activities and requests for accomodations, and Defendant's retaliatory acts were a direct result of such complaints.

98. As a direct and proximate result of Defendant's conduct, Plaintiff has suffered irreparable injuries and damages.

99. As a result of such conduct by the Defendant, Plaintiff has suffered damages and is entitled and is entitled to compensatory damages for, among other things, emotional trauma and the physical consequences thereof suffered by Plaintiff as a consequence of the Defendant's illegal conduct.

100. Defendant's discriminatory treatment of Plaintiff was willful and/or in reckless disregard of Plaintiff's state-protected rights, due to which Plaintiff is entitled to an award of punitive damages against Defendant.

## FIFTH CLAIM FOR RELIEF
### (Violations of the FMLA, 29 U.S.C. § 2601 *et seq.*)

101. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

102. At all times relevant to this Complaint, Plaintiff had a serious medical condition as defined under § 2611 of the FMLA.

103. At all times relevant to this Complaint, Plaintiff was an "eligible employee" as defined under § 2611 of the FMLA.

104. At all times relevant to this Complaint, Defendant was and is an employer as that term is defined by the FMLA, 29 U.S.C. § 2611(4).

105. To the extent that Defendant made such procedures, guidelines and protocols for taking medical leave available to Plaintiff, Plaintiff complied promptly and fully with all such procedures, guidelines and protocols.

106. Defendant failed to offer Plaintiff protected intermittent medical leave pursuant to the FMLA.

107. Defendant retaliated against Plaintiff when he required intermittent medical leave due to his serious medical condition.

108. Defendant terminated Plaintiff as a direct and proximate result of Plaintiff requiring and taking intermittent FMLA leave and thereby took an adverse employment action against Plaintiff.

109. There is a causal connection between the protected activities Plaintiff engaged in and the adverse employment action Defendant took in response.

110. By virtue of the foregoing, pursuant to 29 U.S.C. §§ 2615 and 2617, Plaintiff is entitled to recover twice her lost wages with interest thereon, actual damages, reinstatement, attorneys' fees and costs.

### SIXTH CLAIM FOR RELIEF
**(Retaliation in Violation of the NJ Workers' Compensation Statutes, N.J.S.A. 34:15-39.1, *et seq.*)**

111. Plaintiff repeats and re-alleges each and every allegation set forth in the preceding paragraphs, as if fully set forth herein.

112. Plaintiff did make a claim for workers' compensation benefits.

113. By making a claim for workers' compensation, Plaintiff engaged in protected activity pursuant to New Jersey Workers' Compensation laws.

114. Defendant retaliated against Plaintiff for making a claim for workers' compensation benefits.

115. Defendant terminated Plaintiff for making a claim for workers' compensation benefits.

116. By virtue of the foregoing, Plaintiff is entitled to recover his lost wages with interest thereon, actual damages, reinstatement, attorneys' fees and costs.

### PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered on his behalf in accordance with the above claimed causes of action and requests the following:

    A.    All compensatory and economic damages;

    B.    All reasonable expenses incurred by Plaintiff, including court costs and reasonable and necessary attorney fees, including attorney's fees as provided by statutes, and other relief, both in law and equity, to which Plaintiff may show himself justly entitled;

    C.    All punitive and statutory damages authorized by law;

    D.    Pre-judgment and post-judgment interest; and

    E.    Such further relief as the Court finds just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right.

Dated: Park Ridge, NJ          Respectfully submitted,
       January 18, 2018

                                      **KRAKOWER DICHIARA LLC**

                                      By: s/ Michael R. DiChiara
                                          Michael R. DiChiara
                                      77 Market Street, Suite 2
                                      Park Ridge, NJ 07656
                                      T: (201) 746-0303
                                      F: (347) 765-1600